Good morning, Your Honor. James Decker on behalf of the appellant. If I could reserve five minutes, that may please the Court. There are two primary issues in this case. First, did the defendant, respondents, violate a clearly established constitutional right by fabricating information in police reports? And if so, is there a causation? Did these reports influence the prosecutor to bring charges? The answer to both of these questions, as to both defendants, is yes. First, with respect to Officer Bywater, he is alleged to have deliberately falsified information indicating that Orcutt made racist statements upon his arrest. This violated Orcutt's right not to be subjected to criminal charges on the basis of false evidence. How does that have any causal impact on the charging decision? Because you have at least the claimed identification of the handwriting by McDonald. And then you have other allegations of racist statements by the neighbor. That seems kind of, you know, icing on the cake. Whether he made another racist statement on the way, it doesn't seem to add much or be low-bearing in terms of the decision whether to proceed with charges. So, can you address that issue? Your Honor, I would say causation is inherently a factual issue. And whether this particular evidence influenced the prosecutor to bring charges is not something that we can definitively determine here at the pleading stage. I think the issue is whether it's plausible that this influenced the prosecutor. And I think it is. As I understand Detective Stradley's testimony at the preliminary hearing, they were looking for evidence of Orcutt's racism. They were looking for racist memorabilia. I think this fabricated evidence in Bywater's report is exactly what the prosecution was looking for. And so I think it could have corroborated their theory of the case, however misguided and inappropriate that was. I think it could have influenced the prosecutor's decision. And I think that's all that's needed here at the pleading stage. I mean, the handwriting testimony, I don't know if you want to call it that, from McDonald's seems like a lynchpin really, right? If you don't have that, then there certainly wouldn't be a basis to bring the charges. And you're going to contest that next, I know. But if we were to reject your argument as to McDonald, I guess I'm holding Judge Collins's camp in asking that. I don't know if these alleged statements that your client made could possibly have been the difference maker or even material to the charging decision, given that there was other evidence that he had made similar statements to. Well, I would agree, Your Honor, that the handwriting identification was the primary evidence. But I don't think that eliminates causation. I think this could have contributed to the prosecutor's decision. The fact is, we don't know. The prosecutor could testify in subsequent proceedings that it was the factor. And that this did give her the confidence to go forward. Are you talking about Bywater's affidavit now or Stradley's affidavit? Or what is the it that you're talking about? I was originally referring to Bywater, but then I moved over to McDonald, which was referenced in Stradley's report. And Stradley, are you only relying on the McDonald aspect, or are you relying also on Stradley's description of the emails to Pelletier? Just the McDonald. Okay. That's the characterization. Bywater wrote his affidavit after the incident. So whether or not there was any falsified information in there, it could not have caused Mr. Orcutt's arrest, deprivation of liberty. So there could not be a sufficient allegation of 1983 liability. And that dismissal was correct, right? Your Honor, Bywater is an element. Causation is an element. Absolutely, Your Honor. Bywater's report was prepared after the arrest. The statements that were allegedly reported were made at the time of arrest. So it's not our position that this report caused the arrest because it was during it. It's our position that this report caused the prosecutor to file charges. Okay, but that's not a deprivation of liberty. And, indeed, those charges were dismissed, so there's no harm there. Well, as I understand Caldwell v. San Francisco, the bringing of charges is sufficient. There is no criminal conviction that is needed. And so the fact that charges were brought, a preliminary hearing was held, attorney's fees were incurred, I think is enough under the precedent of this court to state a claim. Yeah, I think that part is right. So causation as to the charging decision is what's key. And, I mean, the statement, the three statements, I think it's three that you're talking about, they're kind of innocuous in relation to even just the other statements for which there was evidence that you don't contest. So I'm just not seeing how you can say that that wasn't the material thing that drew up the charging decision. Our position is that it's plausible that it was, and the fact is we don't know. The prosecutor could say that it was. Imagine if we had the prosecutor's declaration saying that it was a factor. Then I think we would have causation no matter how I might feel about the evidence or someone else might feel that it's inconsequential. I think what matters is the prosecutor's interpretation of that. And there was little evidence in this case to begin with. So from just a pure proportional standpoint, this evidence made up a significant portion of what was there. So I think it's not the final. Let's talk about the handwriting because it seems to be your, that really is key. But as I understand it, you're not contesting the fact that McDonald did say that he did identify your client's, mistakenly he identified your client's handwriting, that's the writing on one of these cards or these letters, right? And you're only contesting the, I guess, false statement and what's the other person's name? Stradley. Stradley. Yes. Saying that he, you know, said it happened in person but it actually happened over the phone. And I guess, again, if that's all you're contesting, it seems to me highly implausible that that would have been material to the charging decision because McDonald still would have been saying, yes, I recognize this person's handwriting and it's your client's. I understand that point, Your Honor. And I think the characterization of that interaction goes to the credibility, the weight, the value of that evidence. I think it's one thing for this interaction to have occurred over the phone. If McDonald simply called the detective and said, this is what I think, it's quite another for that interaction to have taken place in person, I think Stradley would have had the opportunity to evaluate the credibility, the veracity, the worthiness of McDonald's interpretation of that handwriting. All right. On a predicate factual point about McDonald's testimony at the preliminary hearing, do you read it as referring to one officer or two officers? Because he refers to an officer who contacted me while I was in New York traveling and he was on a cell phone walking through the streets of Manhattan. But then the next page he's asked, okay, and then you think you saw it, meaning the cards, and you think you saw it again when the police officer showed it to you. Yes. And then was it the police officer sitting here? No. Okay, someone else. But that seems to refer to an incident that was in person. So were there two contacts with two officers? Two contacts with one officer? How do you read this? We don't know, Your Honor. McDonald's testimony, as I see it, has been all over the place, and it's hard to ascertain what actually transpired. You're pleading that there was a falsity in this, so I want to understand what your claim as to the true facts are. I think what we can infer from the record is that there was no in-person meeting between Stradley and McDonald. Whether McDonald met with someone else, I'm not sure about that. I don't know what actually happened. I don't think we may. I thought McDonald said he talked. Stradley said that he talked to McDonald on the phone, but McDonald said there was a different officer, that that was the basis of the allegation of falsehood, part of it. Yes, that's correct, Your Honor. Your Honor, if I could reserve the remainder of my time. Yes. Okay. Let's see if we can get some further evidence. Good morning, Your Honor. Alana Rotter for the Appellees. Our position is exactly what we've been hearing from the court this morning, which is that it is just not plausible that the alleged fabrications here made a difference in the charging decision. And so the plaintiff can't allege causation, as would be required to pursue his claims as to either of the two officers. Your view, I mean, the argument he makes, which has some support, is that normally causation is a factual issue. I mean, we're not even at summary judgment. We're just somebody looking at allegations in a complaint. You know, it's kind of a low bar normally to, you know, in terms of just pleading facts that could get you onto discovery. Why is it just so outside the bounds of what's reasonable to think that, you know, I don't know, maybe this misstatement particularly about how the handwriting identification occurred might have influenced the prosecutor? I would say, although a motion to dismiss is a different bar than summary judgment, there still is a plausibility requirement. There is some filter here. And as a matter of law here, no reasonable fact finder could find plausible causation on the facts here. If you were to get to summary judgment and be looking at this evidence in the light most favorable to the plaintiff, you still, it would not be plausible that there was any materiality here. Again, as to Bywater, what was just discussed already this morning in terms of those two statements and perhaps impersonating an accent were the things that Bywater mentioned. In the whole scheme of things here, that those things could have made a difference in whether they suspected the plaintiff was the one who wrote these threats is not plausible. We already have Stradley having talked to the neighbors who reported racist comments. We have the prior e-mails, which the officers thought sounded similar in tone. We have the handwriting recognition by McDonald. Did Bywater testify at the preliminary hearing? He did. Does that suggest that the prosecution thought that it was necessary to put him on to make the necessary showing? The only question that the prosecutor asked Bywater at the hearing was whether Mr. Orcutt had referred to monetizing properties during the conversation, which is in the transcript, the written transcript from the body cam footage, and is not anything related to the racist comments that are at issue here that were allegedly fabricated. So the prosecution apparently wanted the tie of the monetizing, which was relevant because some of the threat letters referenced turning properties into hotels and businesses, and there was a connection between the language and the threats and something that Mr. Orcutt's lawyer asked Bywater about the racist comments, but he raised that that prosecution did not apparently see that as an important thing to nail down. I would also mention that at the hearing, the DA, Deputy DA, said that the charges were filed with information from Mr. McDonald, who you heard today, identifying the defendant as the writer of those cards. So the Deputy DA was saying what the Deputy DA finds important. What do you make of McDonald's testimony at the preliminary hearing? Is he referring to two officers or one or two visits with one officer, one by phone, one in person? Your Honor, I'm honestly not sure. I think it's not a model of clarity. The hearing took place more than a year after the events. Mr. McDonald mentioned that his mother was in hospice. You know, it may not have been top of mind which officer he spoke to when, but regardless, I would say this is implausible as to materiality because the salient fact is that Mr. McDonald thinks that this is Mr. Orcutt's handwriting. Based on the number of years they've worked together, having seen him write numerous notes. Suppose an officer writes up a report and he correctly relays someone's identification of the defendant, says it's a bank robber and correctly reports it, but he claims that he was the one who spoke to the person and took the statement. In fact, it's completely false. It was somebody else who took the statement, but he was covering him for some other reason. Is that a material falsehood that could affect the decision to charge that case? I don't know, Your Honor. In that situation, you're positing. Well, not to be disagreeable, but I think you answered the question right, didn't you, that I thought if the information in the report was correct, whether or not the officer falsified where he got it, the ultimate question the prosecutor's looking at is whether or not the information is true. So that limited falsification is immaterial to the question of whether to go forward in the prosecution, right? I think that's true. Because that was my question here. It seems to me that you could read the allegations of the complaint to say that there was a false affidavit lodged by Stradley because Stradley identified or said that McDonald had identified the handwriting to be ore cuts, but Stradley never talked to McDonald according to McDonald, so the affidavit's false as to that aspect. But I thought you said earlier it doesn't matter because, in truth, the handwriting was ore cuts. Well, I think here what I was going to finish answering to Judge Collins to try to pack this all together is that I think there's no question here that Stradley did talk to McDonald, so the hypothetical that you're positing I think is not what we have here. Well, is it clear that Stradley talked to McDonald? Well, McDonald is saying that the phone conversation happened on a certain date. Stradley says he spoke to McDonald. But McDonald very clearly says the person he spoke with on the phone was someone he had known for years, and that's not McDonald. He may have. Again, this is more than a year after the hearing. I don't know. That's what he says in the transcript. He's quite clear on that point. He said, and that was his whole thing, why he was annoyed. He said, I thought that it was a discussion between friends, between an officer I knew personally and grew up in the fire and police service together, that's clearly not McDonald. So the notion that McDonald did have a phone call with him, nothing that, so what he says about the phone call, it's not Stradley. And then he's asked, who showed you to them? Is it Stradley? And he says, not him. So McDonald says, I didn't meet with him in person. I didn't have a phone conversation with him. So it is false for Stradley to have said, at least taking the pleadings as true, it is false for him to say, because McDonald does not say he had a conversation with Stradley. Your Honor, to my understanding, that's not the theory that's been briefed on appeal. The theory that's been briefed on appeal was the question of whether the call was in person or whether the conversation was in person or by phone. In my reading of the briefs, that was not the argument that you're making right now. We have to review the complaint for all inferences from the record. This is what they say. Sure. Again, I don't think that's the theory that's been argued. But, again, I would go back to what Judge Murphy, the point Judge Murphy was making, which is that there is no question that McDonald, in fact, made the handwriting identification. He hasn't been testified to that. He's actually being sued in a separate lawsuit for having made that statement. He made the identification. And the prosecutor is saying that the charges were filed because McDonald made the identification. They send the handwriting off to the FBI lab because they're interested in this identification. And so the identification is driving the investigation. And whether Stradley spoke to the stroke to Mr. McDonald or whether a different officer spoke to Mr. McDonald, there's no indication that that made any difference to anybody. Mr. McDonald was still going to get up there and testify that he made this identification. Did Stradley's conversation with McDonald before or after he submitted the affidavit for the warrants? I believe it is alleged that the conversation was before he submitted the affidavit, but it is not referenced in the affidavit. It just seems really odd, doesn't it? I mean, it's kind of the most significant ties, and it's not put in the affidavit. He's got a number of other things in the affidavit, including the similarity between the e-mails and the threat letters and the comments by the neighbors. Now, do you think his description of the e-mails in the affidavit was accurate? Your Honor, that's not one of the fabrications that's being laid. I've heard my opposing counsel say that that's not one of the fabrications. I know, but I should, you know, you're here as an officer of the court. Sure. And he described his original e-mail was very aggressive, prejudiced, racially profiling, and angry. I've read the e-mail, and there's no indication in the e-mail at all of racial profiling. I mean, to me, this would get a Frank's hearing, the description of what's in here of these e-mails. When you read the e-mails, the e-mails were not given to the magistrate judge. He misrepresented the content of those e-mails in this affidavit. I think this would meet the Frank standard, frankly, to get a hearing as to what he did. And you remove the e-mails, and there's nothing in this affidavit. So can you explain what went on here? Well, I can only do the best I can on the appellate record, which is what I have as an appellate lawyer. So what was in people's minds I'm not able to say. But the e-mails do have a lot of similar to the threat letters in terms of the specific block that was being targeted, a concern about people loitering in the neighborhood, a description of the person as Hispanic, and then a leap to probably a felon. And although he doesn't draw the line to say the reason I think he's a felon is that he's Hispanic, an officer could think that the assumption that someone is Hispanic makes them more likely to be a felon could be an indication of racial stereotyping. The e-mail very clearly makes clear that he thinks that he's a felon because he's living out of the car for 22 hours a day and seems to be up to no good and expresses an undue interest in women passing by at 2 in the morning. I also had a question. I don't know if you know the answer to this. The e-mails are all in the record, and there's this one e-mail that he sent to a different person in the slow government called Chris Chitty. And it says that Vicki is using the attorney portal, and he picked up a felony warrant today for failure to appear, so I'm thinking it's not likely he'll show up here. And if he does, I'll call Lickety Split. Is that a reference to this person who he was obsessed with on the block, that there wasn't actually a felony arrest warrant for him? Do you know what that means? That may be. No, that seems to be what he is saying. But, again, I have the same amount of information that the court has. Is it plausible to conclude on the basis of our review of the complaint, that it's an amended complaint as I understand it, specific allegations about Stradley, that the prosecutor who spoke to the judge at the preliminary hearing would not have filed charges against Mr. Orcutt, absent the affidavit of Stradley? Well, would not have filed charges without the McDonald handwriting recognition. And that came to her attention through the affidavit of Stradley, correct? It was Stradley's police report. Police report, I'm sorry, right. There's a separate affidavit. There's sufficient allegations in the complaint, and I think there's really only a paragraph about this, which is more detailed than the other paragraphs, frankly. It seems to me that if that allegation of falsehood as to Stradley's complaint, or I'm sorry, police report is sufficiently alleged, you meet all the standards which I was talking to Mr. Decker about, including causation. Well, again, we still have McDonald having the underlying fact that Mr. McDonald did identify the handwriting. That is not disputed, and that's the material piece. And so no causation, because that piece remains. Okay. So then we get to the issue of fairty now. What's false and what was relied on and what wasn't? And I would say the complaint is not a model of clarity, but the plaintiff, it's the plaintiff's burden on appeal if they want leave to amend, to articulate what the theories are that they could amend. And the ideas that have been voiced here today are not in the briefs as positing what could be amended to articulate any of these ideas. The plaintiff already had the one chance to amend in the district court. And so on the briefing, I don't think that the plausibility threshold is met as to either by water, who we haven't really discussed in depth, but as to by water in those few statements, or as to straggly in terms of in-person versus not in-person, looking at the letters at the time, not looking at the letters at the time, that those don't meet the plausibility standard. And on the dodgement of time, I just do want to flag that summary judgment was on eight causes of action and that only one of them is being challenged on appeal. So whatever the disposition. Summary judgment. I'm sorry, the 12v6 motion. I'm very sorry. The 12v6 motion was as to the whole complaint and was granted as to the whole complaint and that only the eighth cause of action is being challenged at all on appeal. So whatever the disposition of the opinion is, there are seven causes of action and multiple defendants that are now out of the picture regardless of the disposition of the issues that have been raised on appeal. So we're just flagging that any disposition we request make that clear as to the rest of the causes of action. Okay. Thank you very much. Thank you. Do we have some time for rebuttal? Plenty of time. Thank you, Your Honor. My friend seems to think that the evidence in question is weak and meaningless, and quite frankly I would use those words to describe all of the evidence that was brought up against Orcutt. But what matters here is what the prosecutor thought of the sentence, and the truth is we don't know. And discovery would perhaps bear that out. As it is pled, I think the complaint is sufficient because we don't know what the prosecutor was thinking. And until then, I go on that point. Can I ask you the next question? Am I remembering the sequence right? I'm sorry, I keep thinking of the name. Stradley is the one who gives the McDonald handwriting ID. He initially says that this guy, you know, had this in-person meeting with McDonald and showed him the thing and McDonald identified it, but didn't Stradley then correct that and say actually it was a telephone conversation long before we ever got to the preliminary hearing? In other words, I thought there was a gap between when the prosecutor, like the prosecutor made the charging decision on the basis of Stradley having said it was an in-person meeting, but I thought then that not too long after that, Stradley corrected that and said no, it was actually a telephone conversation, but then the case proceeded for quite some time before we get to the preliminary hearing. And then it's at the preliminary hearing that the prosecutor then says, well, we sent it off to the lab and they can't confirm this so we're dismissing it. If that were the sequence, it would seem pretty clear that obviously what was driving it for the prosecutor in terms of going forward with the case was not the in-person versus over the phone. Your Honor, that is not my understanding of what transpired. I know of a police report that is outside the record. I'm not sure that the court would want me to comment on that because it's not part of the record, but it is not my understanding that that is what transpired. So unless the court has any questions, I'm willing to submit. Okay. No, I don't think we have any other questions. Thank you very much for your argument. The case just argued is submitted.
judges: WATFORD, COLLINS, Murphy